**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| DOMINIQUE L. RIVERS | : | CIVIL ACTION |
| (DOC #544280) | : | NO. 19-372 |
| | | |
| VERSUS | : | JUDGE JOHN W. deGRAVELLES |
| | | |
| MAJOR MARCUS JONES | : | MAGISTRATE JUDGE |
| | | SCOTT D. JOHNSON |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

<u>**MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**</u>

**MAY IT PLEASE THE COURT:**

Defendant, Marcus Jones, respectfully moves this Honorable Court for a summary judgment in accordance with Rule 56 of the Federal Rules of Civil Procedure on the grounds that Defendant, is entitled to qualified immunity and he did not use excessive force against Plaintiff. As such, this Honorable Court should grant Defendant's motion and dismiss Plaintiff's claims.

**I.    <u>STATEMENT OF THE CASE</u>**

Plaintiff, Dominique Rivers (DOC #544280) is an inmate sentenced to the custody of the Louisiana Department of Public Safety and Corrections and housed at Louisiana State Penitentiary.[1] The date of incident was December 13, 2018.[2] Plaintiff alleges that on December 13, 2018, Captain Marcus Jones used excessive force by administering chemical agent on him.[3]

On December 13, 2018, Plaintiff was housed at Cellblock D, Lower-Right Tier in Cell #11.[4] Marcus Jones was a Captain at the Main Prison Cell Blocks at Louisiana State Penitentiary.[5] Cellblock D is a cellblock located at the Main Prison Cell Blocks.[6] As a Captain, Marcus Jones

---

[1] R. <u>Doc. 1</u>.
[2] R. <u>Doc. 1</u>.
[3] R. <u>Doc. 1</u>.
[4] Exhibit A - December 13, 2018 Cellblock D Offender Roster.
[5] Exhibit B - Affidavit of Marcus Jones at ¶ 3.
[6] Ex. B at ¶ 6.

had the responsibility of making rounds on the tiers he was supervising.[7] On the incident date, Capt. Jones walked down the Cellblock D, Lower-Right to make an unannounced round.[8]

While making an unannounced round, Capt. Jones walked by Plaintiff's cell, Cell #11, and Plaintiff attempted spit on Capt. Jones.[9] After Plaintiff attempted to spit on Capt. Jones, Capt. Jones activated his body camera and approached Plaintiff's cell to restrain Plaintiff.[10] Capt. Jones gave Plaintiff several, direct, verbal orders to approach the cell bars so that Capt. Jones could restrain Plaintiff.[11] Plaintiff disregarded Capt. Jones' orders, did not want to be restrained, cursed at Capt. Jones, and attempted to spit at Capt. Jones again.[12]

After Plaintiff attempted to spit at Capt. Jones for a second time, Capt. Jones administered the minimum amount of chemical agent required to regain control of the situation.[13] After Capt. Jones administered the chemical agent, Plaintiff began to comply with all orders given.[14] Capt. Jones restrained Plaintiff, placed Plaintiff in the shower, and gave Plaintiff a fresh jumpsuit.[15]

For the reasons more fully stated below, Defendant, Marcus Jones, appears in this *Motion for Summary Judgment* moving this Honorable Court to issue a judgment, dismissing all of Plaintiff's claims against him.

## II.    LAW ON SUMMARY JUDGMENT

Pursuant to well-established legal principles, summary judgment is appropriate where there is no genuine disputed issue as to any material fact and the moving party is entitled to judgment

---

[7] Ex. B at ¶ 4.

[8] Exhibit C - December 13, 2018 Cellblock D, Lower-Right tier Logbook at page 4; Ex. B at ¶ 10.

[9] R. Doc. 23 at page 4, RFA #1. Plaintiff did not respond within the time period set forth in FRCP Rule 36(a)(3) and is deemed admitted. Ex. B at ¶ 12.

[10] Ex. B at ¶ 13.

[11] Ex. B at ¶ 13.

[12] R. Doc. 23 at page 4, RFA #2 and #5. Plaintiff did not respond within the time period set forth in FRCP Rule 36(a)(3) and is deemed admitted. Ex. B at ¶ 14.

[13] Ex. B at ¶ 15.

[14] Ex. B at ¶ 19.

[15] Ex. B at ¶ 19.

as a matter of law.[16] Supporting affidavits must set forth facts, which would be admissible in evidence, and opposing responses must set forth specific facts showing that there is a genuine issue for trial.[17] If the moving party carries its burden of proof under Rule 56, the opposing party must direct the Court's attention to specific evidence in the record which demonstrates that the non-moving party can show a reasonably jury that it is entitled to a verdict in its favor.[18]

This burden is not satisfied by some metaphysical doubt as to alleged material facts, by unsworn and unsubstantiated assertions, by conclusory allegations, or by a mere scintilla of evidence.[19] Rather, Rule 56 mandates that summary judgment be entered against a party who fails to make a showing sufficient to establish the existence of an essential element to that party's case and on which that party will bear the burden of proof at trial.[20]

The party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which the evidence supports his or her claim."[21] Conclusory statements, speculation, and unsubstantiated assertions are not competent summary judgment evidence and do not defeat a properly supported motion for summary judgment.[22] Summary judgment is appropriate in any case where the evidence is so weak or tenuous on essential facts that the evidence could not support a judgment in the favor of the non-moving party.[23]

---

[16] FED. R. CIV. P. 56; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 258 (1986).
[17] *Anderson,* 477 U.S. at 248.
[18] *Id.*
[19] *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).
[20] *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).
[21] *Ragas v. Tennessee Gas Pipeline Co*., 136 F.3d 455, 458 (5th Cir. 1998).
[22] *Id.*; *Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1429 (5th Cir. 1996).
[23] *Little*, 37 F.3d at 1076.

The Defendant in this matter, Marcus Jones, satisfies his initial responsibility in moving for summary judgment by informing the Court of the basis for his motion through the *Statement of Uncontested Facts* and the attached exhibits. The attached exhibits are as follows:

**Exhibit A:** December 13, 2018 Cellblock D, Lower-Right Inmate Roster;

**Exhibit B:** Affidavit of Marcus Jones;

**Exhibit C:** December 13, 2018 Cellblock D, Lower-Right Logbook;

**Exhibit D:** Louisiana State Penitentiary Directive No. 09.002 – Use of Force;

**Exhibit E:** December 13, 2018 Disciplinary Report;

**Exhibit F:** December 13, 2018 Warden's Unusual Occurrence Report;

**Exhibit G:** Administrative Remedy Procedure No.: LSP-2018-2078; and

**Exhibit H:** Sick Call Sheet of Plaintiff, Dominique Rivers (DOC #544280).

### III.    ARGUMENT

#### A. Qualified Immunity

Qualified immunity balances two important interests – the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction and liability when they perform their duties reasonably.[24]  The qualified immunity defense is a familiar one and operates to protect a public official who is performing a discretionary task.[25]  Government officials, performing discretionary functions, "generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."[26] Qualified immunity allows officials the freedom to exercise fair judgment, protecting "all but the

---

[24] *Pearson v. Callahan*, 129 S.Ct. 808, 815-816, citing *Harlow v. Fitzgerald*, 102 S.Ct. 2727, 2738 (1982).
[25] *Hale v. Townley*, 45 F.3d 914 (5th Cir. 1995).
[26] *Harlow v. Fitzgerald*, 102 S.Ct. 2727, 2738 (1982).

plainly incompetent or those who knowingly violate the law."[27]  Actions and decisions made by officials that are merely inept, erroneous, ineffective, or negligent do not amount to deliberate indifference and do not divest officials of qualified immunity."[28]

The U. S. Supreme Court has repeatedly stressed that the immunity issue must be resolved at the earliest possible stage of the litigation since it entails not merely a defense to liability, but is instead immunity from suit and an entitlement not to stand trial or face the other burdens of litigation.[29] The Courts have traditionally used the two-step method in determining whether a defendant is entitled to qualified immunity. The District Court judges have the discretion to determine which of the two prongs should be analyzed first.[30]

The first step in the analysis is to consider whether, taking the facts as alleged in the light most favorable to the plaintiff, the defendant's conduct violated the plaintiff's constitutional right.[31]  This is a "purely legal question" to be determined by the Court.[32]  The court uses currently applicable constitutional standards to make this assessment.[33]  The plaintiff bears the burden of pleading such a violation of clearly established law.[34]

The second step the district court must determine is whether the right allegedly violated was clearly established at the time of the infraction.[35]  The relevant, dispositive inquiry in determining whether a constitutional right was clearly established is whether it would have been

---

[27] *Malley v. Briggs*, 106 S.Ct. 1092, 1096 (1986).
[28] *Alton v. Texas A&M University*, 168 F.3d 196, 201 (5th Cir. 1999).
[29] *Saucier v. Katz*, 533 U.S. 194, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001).
[30] **Pearson v. Callahan**, 129 S.Ct. 808 at 818, 172 L.Ed.2d 565 (2009).
[31] *Id.*
[32] *Siegert v. Gilley*, 111 S.Ct. 1789, 1793 (1991).
[33] *Saucier*, 121 S.Ct. at 2156.
[34] See *Mitchell v. Forsyth*, 105 S.Ct. 2806, 2815 (1985).
[35] *Id.*

5

clear to a reasonable state official that his conduct was unlawful in the situation which he confronted.[36]

The court must determine whether an alleged right was established with sufficient particularity that a reasonable official could anticipate his actions would violate that right.[37]  The right that the official is alleged to have violated must have been "clearly established" in a more particularized and more relevant sense.  The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right at the time.[38]  As the Supreme Court held:

> The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful *in the situation he confronted*.[39]

If the law did not put the officer on notice that his conduct in the situation he confronted would be clearly unlawful, he is entitled to qualified immunity.[40]  Officials are not expected to determine the manner in which the law's gray areas might be clarified or defined.[41]  Further, the Supreme Court has held that qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law".[42]  Defendants sued in their individual capacities should be granted qualified immunity unless their actions "were patently incompetent or intentionally flouted the law."[43]

---

[36] *Id.*
[37] *Anderson* v. Creighton, 107 S.Ct. 3034, 3039 (1987).
[38] *Saucier*, 121 S.Ct. at 2156.
[39] *Id.* (*emphasis added*).
[40] *Id.* at 2156-57.
[41] *Davis v. Scherer*, 104 S.Ct. 3012, 3019-20 (1984).
[42] *Malley v. Briggs*, 106 S.Ct. 1092, 1096 (1986).
[43] *Brady v. Fort Bend County*, 58 F.3d 173, 173 (5th Cir. 1995); *see also Shipp v. McMahon*, 234 F.3d 907, 915 (5th Cir. 2000) (noting that "courts have narrowly adjudicated issues of qualified immunity largely to the benefit of government officials," and qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law").

As it relates to the application of qualified immunity, the recently decided Fifth Circuit case *McCoy v. Alamu,* is seemingly on-point to the case at bar.[44] In *McCoy*, offender McCoy filed suit claiming that Mr. Alamu, a corrections officer, violated offender McCoy's constitutional rights by use of excessive force. Offender McCoy claimed that one of offender McCoy's neighboring inmates threw liquid substances on corrections officer Alamu on two separate occasions. As a result of the throwing of the liquid substances, Alamu administered chemical agent upon offender McCoy. There is a dispute of whether Alamu administered the chemical agent as a means of retaliation (as McCoy alleges) or as a matter of panic (as Alamu claims).[45]

In its analysis of the qualified immunity defense, the Fifth Circuit first looked to determine that there was a genuine factual dispute of whether Alamu used excessive force.[46] The Fifth Circuit noted that there was a dispute of fact because, as McCoy's recollection of the events, there was no need to subdue McCoy.[47] The Fifth Circuit then moved onto the second prong of the qualified immunity analysis wherein they sought to determine whether "the relevant right was clearly established" that Plaintiff claimed was violated.[48]

The Fifth Circuit began its analysis on the question of "whether the violative nature of *particular* conduct is clearly established," and that inquiry must be looked at through the "specific context of the case."[49] Determining whether the law conduct was clearly established is difficult in excessive-force cases because the result depends very much on the facts of each case.[50] For the law to be clearly established, it must have been "beyond debate" that Alamu broke the law.[51] For

---

[44] 950 F.3d 226, (5th Cir. 2020).
[45] *Id* at 229.
[46] *Id* at 230.
[47] *Id* at 231.
[48] *Id* at 232, *citing Morrow v. Meachum*, 917 F.3d 870, 874 (5th Cir. 2019).
[49] *McCoy*, 950 F.3d at 232, *citing Mullenix v. Luna*, — U.S. ——, 136 S. Ct. 305, 308, 193 L.Ed.2d 255 (2015) (per curiam) (citation and quotation marks omitted).
[50] *McCoy*, 950 F.3d at 233, *citing Morrow*, 917 F.3d at 874, 876.
[51] *McCoy*, 950 F.3d at 233, *citing White v. Pauly*, — U.S. ——, 137 S. Ct. 548, 551, 196 L.Ed.2d 463 (2017).

the law to be clearly established, it must be beyond debate that the spraying crossed the line dividing a *de minimis* use of force from a cognizable one.[52]

Offender McCoy attempted to argue against the application of qualified immunity in this case using the general principle that prison officers cannot act maliciously and sadistically to cause harm. The Fifth Circuit did not see this argument as sufficient due to the Supreme Court has repeatedly admonished courts not to define the relevant law too capaciously.[53] The "illegality" of the particular conduct in question must be undebatable.[54] In applying the *Hudson* factors, the Fifth Circuit determined that two of the five factors weighed in favor of Alamu and as such, the alleged constitutional violation was not obvious.[55]

The Fifth Circuit held that even though the spraying crossed the line, it was not *beyond debate* that it did, so the law was not clearly established.[56] The Fifth Circuit, acknowledged that even though there was a dispute of fact, that the alleged violation was not clearly established and upon reliance of previous repeated Supreme Court reversals for failing to define established law narrowly, that the Fifth Circuit must follow that binding precedent.[57]

In applying *McCoy* to the case at bar, qualified immunity applies to Capt. Jones. It is not beyond debate that Capt. Jones' use of chemical agent does not cross the line of being a constitutional violation.[58] Capt. Jones entered Cellblock D, Lower-Right to make an unannounced round.[59] Making a round is an ordinary duty Capt. Jones must perform.[60] It was when he was

---

[52] *McCoy*, 950 F.3d at 233,  *citing Hudson*, 503 U.S. at 9–10, 112 S.Ct. 995.
[53] *McCoy*, 950 F.3d at 234, *citing Ashcroft v. al-Kidd*, 563 U.S. 731, 742, 131 S.Ct. 2074, 179 L.Ed.2d 1149 (2011).
[54]  *McCoy*, 950 F.3d at 234, *citing Ziglar v. Abbasi*, ⸻ U.S. ⸻, 137 S. Ct. 1843, 1866, 198 L.Ed.2d 290 (2017).
[55] *Id* at 234.
[56] *Id*  at 233.
[57] *Id* at 234, FN 8.
[58] *Id* at 233.
[59] Ex. C at page 4; Ex. B at ¶ 10.
[60] Ex. B at ¶ 4.

making his round on Cellblock D, Lower-Right that—like Alamu—Capt. Jones was subjected to something being hurled at him when, Plaintiff spit at Capt. Jones.[61]

After Plaintiff's attempt to spit upon Capt. Jones, Capt. Jones approached Plaintiff's cell and gave Plaintiff the order to approach the cell bars to be restrained.[62] Plaintiff then refused the orders given to him and attempted to spit on Capt. Jones for a second time.[63] Plaintiff's continuous refusal of the orders given to him led to Capt. Jones administering the minimal amount of chemical agent required to regain control and maintain institutional safety.[64]

*McCoy* differs from the case at bar in a drastic way; in *McCoy*, Alamu— the corrections officer in the case— administered his chemical agent on an unsuspecting, innocent offender. In the present case, Capt. Jones administered chemical agent on Plaintiff due to his continued refusal to comply with the direct verbal orders given to him. In this matter, the facts do not portray a case of mistakenly spraying the incorrect offender, nor does it portray a leaving and returning to exact vengeance, and it does not demonstrate a "sneak attack". The administration of chemical agent was done after Plaintiff spit at Capt. Jones twice and refused several direct verbal orders.[65]

Additionally in reviewing the *McCoy* matter, after an institutional investigation was conducted, it was determined that Alamu's use of force was unnecessary and inconsistent with prison rules, and he was placed on three months' probation.[66] That is not the case here. Capt. Jones issued a disciplinary report and the Disciplinary Board determined that Plaintiff violated

---

[61] R. Doc. 23 at page 4, RFA #1. Plaintiff did not respond within the time period set forth in FRCP Rule 36(a)(3) and is deemed admitted. Ex. B at ¶ 12.

[62] Ex. B at ¶ 13.

[63] R. Doc. 23 at page 4, RFA #2 and #5. Plaintiff did not respond within the time period set forth in FRCP Rule 36(a)(3) and is deemed admitted. Ex. B at ¶ 14.

[64] Ex. B at ¶ 15.

[65] R. Doc. 23 at page 4, RFA #1, 2, and 5. Plaintiff did not respond within the time period set forth in FRCP Rule 36(a)(3) and is deemed admitted.

[66] *McCoy*, 950 F.3d at 229 (5th Cir. 2020).

institutional rules.[67] Capt. Jones also submitted a Warden's Unusual Occurrence Report that documented that he had to use force on Plaintiff due to Plaintiff's continued defiance of the orders given to him.[68] Plaintiff's administrative grievance was denied at both steps; determining that Capt. Jones responded to the situation properly and that the force used was appropriate.[69] Louisiana State Penitentiary policy allows for the administration of chemical agent if an offender continuously defies orders to come to the bars of the cell to be restrained and more generally, to regain control of the institution of part of it.[70] In efforts to control situations, after other means fail, supervisors may use the minimum amount of chemical agent necessary to maintain security.[71]

Additionally, it was not clear that Capt. Jones' use of chemical agent on Plaintiff was a potential violation of Plaintiff's constitutional rights. Louisiana State Penitentiary has a Use of Force Policy that sets forth guidelines to govern how officers are to use force.[72] Force is allowed to be used when all other options have been exhausted, are unavailable, and/or are not feasible.[73] Force used is in response to offenders actions.[74] An officer is allowed to use chemical agent on an offender that demonstrates resistance as a means to gain offender compliance and enforce institutional rules.[75]

Plaintiff not only spit at Capt. Jones, but also continued to disregard the orders given to him to come to the bars to be restrained.[76] With this continued resistance and defiance, the policy

---

[67] Exhibit E - December 13, 2018 Disciplinary Report. R. Doc. 23 at page 4, RFA #3 and #4. Plaintiff did not respond within the time period set forth in FRCP Rule 36(a)(3) and is deemed admitted.
[68] Exhibit F – December 13, 2018 Warden's Unusual Occurrence Report.
[69] Exhibit G - Administrative Remedy Procedure 2018-2708.
[70] Ex. D at page 9, section C(1)(c) and (4)(a).
[71] Ex. D at page 10, section C(7).
[72] Ex. D.
[73] Ex. D at page 4.
[74] Ex. D at page 3.
[75] Ex. D at page 3 and 6.
[76] R. Doc. 23 at page 4, RFA #5. Plaintiff did not respond within the time period set forth in FRCP Rule 36(a)(3) and is deemed admitted. Ex. B at ¶ 14.

in place at Louisiana State Penitentiary authorized Capt. Jones to use chemical agent as a means to restore order and control. It was not clearly established that the use of chemical agent to restore order and control was a potential violation of Plaintiff's constitutional rights. Plaintiff must show that Capt. Jones violated a constitutional right and that the violated right was "clearly established" at the time of Capt. Jones using chemical agent.[77]

Furthermore, Capt. Jones does not need to show an absence of genuine disputes of material fact and entitlement to judgment as a matter of law with the defense of qualified immunity.[78] In order for Plaintiff to overcome the burden of proving that qualified immunity does not apply, Plaintiff must point to a version of disputed facts that constitute a violation of clearly established law and identify a body of relevant case law in which an officer acting under similar circumstances was determined to have violated the Constitution.[79]

### i. The Force Used on Plaintiff was not Excessive

Plaintiff cannot support his excessive force claim against Captain Marcus Jones with evidence. As such, this Honorable Court should dismiss the claims of excessive force.

Force is considered excessive in violation of the Eighth Amendment of the United States Constitution if it is applied maliciously and sadistically for the very purpose of causing harm rather than in a good faith effort to maintain or restore discipline.[80] The Eighth Amendment's prohibition against cruel and unusual punishment, however, necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that such force is not of a sort "repugnant to the conscience of mankind."[81] "[W]henever a corrections officer stands accused of using

---

[77] *Joseph on behalf of Estate of Joseph v. Bartlett*, No. 19-30014, 2020 WL 6817823, at *5 (5th Cir. Nov. 20, 2020).
[78] *Id.*at *6.
[79] *Id.*
[80] *Wilkins v. Gaddy*, 559 U.S. 34, 37 (2010), *quoting Hudson v. McMillian*, 503 U.S. 1, 7 (1992).
[81] *Hudson*, 503 U.S. at 10.

11

excessive physical force in violation of the Cruel and Unusual Punishments Clause, the core

judicial inquiry is…whether force was applied in a good faith effort to maintain or restore

discipline, or maliciously and sadistically to cause harm.[82]

It must be understood that a constitutional violation does not occur every time an officer

touches someone.[83] In just about every conceivable situation, some amount of force or contact

would be too nominal to constitute a constitutional violation.[84] When the force used is insufficient

to satisfy the legal standard necessary for recovery, the amount of force is *de minimis* for

constitutional purposes.[85] The amount of force that is constitutionally permissible, therefore, must

be judged by the context in which that force is deployed.[86]

The factors the Court must consider are: (1) the extent of injury sustained, (2) the need for

the application of force, (3) the relationship between the need for force and the amount of force

utilized, (4) the threat reasonably perceived by prison officials and (5) any efforts made to temper

the severity of a forceful response.[87]  The Court must give an adequate evaluation of all of the

factors.[88]

**a.**  Hudson Factors

*1. Extent of Injury Sustained*

In review of Plantiff's Complaint, Plaintiff does not state that he has suffered any injury.[89]

In order to bring a federal action, Plaintiff must show that he suffered a physical injury.[90] Since

---

[82] *Hudson*, 503 U.S. at  7.
[83] *Ikerd v. Blair*, 101 F.3d 430, 434 (C.A. 5 (La.), 1996) (quoting *Hudson*, 503 U.S. at 9).
[84] *Ikerd,* 101 F.3d at 434.
[85] *Id*.
[86] *Id.*
[87] *Hudson*, 503 U.S. at 7.
[88] *Martin v. Seal*, 510 F. App'x 309, 316–17 (5th Cir. 2013).
[89] Rec. Doc. 1 at page 5.
[90] 42 U.S.C. § 1997e(e).

Plaintiff has failed to assert any physical injury, Plaintiff's § 1983 claims asserted against Capt. Jones for compensatory damages, are subject to dismissal.[91]

When seen by medical, Plaintiff informed medical personnel that he had no medical complaints.[92] His oxygen level was at 100%.[93] His respiration rate was at a normal level of 18.[94] Even in the event that Plaintiff could have suffered an injury, the injury would have been minimal and would have resolved after he would have showered. After an officer uses chemical agent, an offender is offered a shower and change of clothes.[95] After Capt. Jones administered the chemical agent, Capt. Jones restrained Plaintiff, placed Plaintiff in the shower, and gave Plaintiff a fresh jumpsuit.[96] As such it is clear that Plaintiff did not suffer an injury greater than *de minimis*.

## 2. *Need for Application of Force*

As previously noted, Capt. Jones was making an unannounced round and walked by Plaintiff's cell where Plaintiff attempted spit on him.[97] After Plaintiff attempted to spit on Capt. Jones, Capt. Jones activated his body camera and approached Plaintiff's cell to restrain Plaintiff.[98] Capt. Jones gave Plaintiff several, direct, verbal orders to approach the cell bars so that Capt. Jones could restrain Plaintiff.[99] Plaintiff refused these orders and attempted to spit on Capt. Jones.[100]

---

[91] *Savage v. Lamartiniere*, No. CV 18-831-BAJ-RLB, 2019 WL 5076841, at *1 (M.D. La. Sept. 20, 2019), *report and recommendation adopted sub nom. Savage v. Lamartinierre*, No. CV 18-831-BAJ-RLB, 2019 WL 5068654 (M.D. La. Oct. 9, 2019).

[92] Exhibit H – Sick Call Sheet of Plaintiff, Dominique Rivers (DOC #544280) at section titled "Assessment/Comment".

[93] Ex. H at section titled "Other".

[94] Ex. H at section titled "Resp". The normal range of respiration rate is between 12 and 20. https://my.clevelandclinic.org/health/articles/10881-vital-signs.

[95] Ex. D at page 11, section C(9).

[96] Ex. B at ¶ 19.

[97] R. Doc. 23 at page 4, RFA #1. Plaintiff did not respond within the time period set forth in FRCP Rule 36(a)(3) and is deemed admitted. Ex. B at ¶ 12.

[98] Ex. B at ¶ 13.

[99] Ex. B at ¶ 13.

[100] R. Doc. 23 at page 4, RFA #2 and #5. Plaintiff did not respond within the time period set forth in FRCP Rule 36(a)(3) and is deemed admitted. Ex. B at ¶ 14.

Once Plaintiff refused the orders given to him by Capt. Jones, after Plaintiff attempted to spit on Capt. Jones, Louisiana State Penitentiary policy allowed Capt. Jones to administer chemical agent.[101] Capt. Jones administered the minimum amount of chemical agent required to regain control of the situation as allowed by the Louisiana State Penitentiary Policy.[102] Capt. Jones administered chemical agent on Plaintiff to regain compliance to restrain Plaintiff.[103] Capt. Jones did not administer chemical agent as a means of punishing Plaintiff.[104] Capt. Jones did not administer chemical agent as a means of inflicting unnecessary pain on Plaintiff.[105] As such, there was a need for Major Lollis to use force to bring Plaintiff back into compliance and to follow institutional rules.

### 3. Amount of Force Utilized

The Use of Force Policy of Louisiana State Penitentiary allows for the use of chemical agent to quell a riot, quell a disturbance that could lead to a serious situation that may jeopardize safety, and to regain control of the institution.[106] Once the direct verbal order was given to Plaintiff and Plaintiff refused said order, control needed to be regained. After the order was given, Plaintiff attempted to spit at Capt. Jones again.[107] Capt. Jones administered the minimum amount of chemical agent required to regain control of the situation as allowed by the Louisiana State Penitentiary Policy.[108] Capt. Jones administered chemical agent on Plaintiff to regain compliance to restrain Plaintiff.[109] This shows that the minimum amount of force was used.

---

[101] Ex. D at page 9, section C(1)(c), C(4)(a) and at page10, section C(7).
[102] Ex. B at ¶ 15.
[103] Ex. B at ¶ 18.
[104] Ex. B at ¶ 16.
[105] Ex. B at ¶ 17.
[106] Ex. D at C(1)(a)-(c).
[107] R. Doc. 23 at page 4, RFA #2. Plaintiff did not respond within the time period set forth in FRCP Rule 36(a)(3) and is deemed admitted. Ex. B at ¶ 14.
[108] Ex. B at ¶ 15.
[109] Ex. B at ¶ 18.

*4.    Threat Reasonably Perceived by Prison Officials*

While Plaintiff was inside his cell alone, the threat posed is that continued refusal of orders could potentially lead to other offenders disregarding orders or in an extreme case, begin to spit at Capt. Jones. The Use of Force Policy allows for the use of the minimum amount of chemical agent to restore security and order in the institution.[110] With Plaintiff's continued defiance, there was the potential to lead to further disruptions and the enticement of other offenders to be a threat to order. This shows that Plaintiff was a legitimate threat and that it was necessary to get him under control.

*5.    Efforts Made to Temper the Severity of a Forceful Response*

After Plaintiff attempted to spit on Capt. Jones, Capt. Jones activated his body camera and approached Plaintiff's cell to restrain Plaintiff.[111] Capt. Jones gave Plaintiff direct verbal orders to approach the bars to be restrained.[112] Capt. Jones did not approach the bars and start spraying his chemical agent. Capt. Jones gave Plaintiff warnings as required by the Louisiana State Penitentiary policy. When Capt. Jones gave the direct verbal warnings, he attempted to temper a response that used force. Additionally, once Capt. Jones administered chemical agent, he only used the minimum amount as required by Louisiana State Penitentiary Policy.

As noted in the analysis of the *Hudson* factors, the force used by Capt. Marcus Jones was not excessive and therefore the claim against him should be dismissed.

## IV.    CONCLUSION

As shown by the attached exhibits and referenced law, Plaintiff's claims against Captain Marcus Jones should be dismissed. Capt. Jones is entitled to qualified immunity. Capt. Jones administered chemical agent as a means to restore order and maintain safety at Louisiana State

---

[110] Ex. D at section C.
[111] Ex. B at ¶ 13.
[112] Ex. B at ¶ 13.

Penitentiary. Plaintiff cannot put forth competent summary judgment evidence that Capt. Jones used excessive force against him. Capt. Jones' use of chemical agent was not done maliciously and sadistically. If this Honorable Court determines that the force used was excessive, Capt. Jones is entitled to qualified immunity. As such, Plaintiff's claims against Defendant should be dismissed with prejudice, and at Plaintiff's sole cost.

Respectfully submitted,

**JEFF LANDRY**
**ATTORNEY GENERAL**

BY:   */s/ Kendale J. Thompson*
Kendale J. Thompson (37331)
Assistant Attorney General
Louisiana Department of Justice
Litigation Division, Civil Rights Section
1885 North Third Street, Fourth Floor
Post Office Box 94005
Baton Rouge, Louisiana (70804-9005)
Telephone: 225-326-6300
Facsimile: 225-326-6495
E-mail: ThompsonK@ag.louisiana.gov
*Attorney for Defendant*

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on December 10, 2020, undersigned filed the above-entitled pleading electronically with the Clerk of Court by using the CM/ECF system and a copy of the foregoing was provided to pro se inmate plaintiff via U.S. First Class Mail, to the below name and address:

*Pro Se Plaintiff*
Dominique Rivers (DOC #544280)
Louisiana State Penitentiary
Angola, Louisiana 70712

*/s/Kendale J. Thompson*
Kendale J. Thompson (#37331)
Assistant Attorney General